Your Honors, may it please the Court. You might want to pull the mic. Your Honors, good morning and may it please the Court. My name is Dawn L. Goldstein. I'm here representing the National Labor Relations Board in this case. The rule being challenged in this case establishes a duty for employers within the board's jurisdiction to post an official board notice informing employees of their rights under the National Labor Relations Act. This rule corrects a long-standing anomaly. Until now, the board has been almost alone among agencies and departments administering major federal labor employment laws because all the other such agencies have required covered employers to routinely post workplace notices informing employees of their rights. Based on statutory authorization. That is correct, Your Honor. I guess that sort of gets to the heart of my problem, so if you could help me with it. Congress has had, and I come from a Title VII background, so I'm very familiar with the posting of notices. Here, though, Congress has had every opportunity to amend the statute to give the NLRB the same authority that the EEOC and other federal agencies have, and has at every turn chosen not to. So doesn't that caution the Court from taking the step that Congress apparently, for whatever reason, rightly or wrongly, decided not to take? And that's sort of my basic issue here. Respectfully, Your Honor, we cited cases in our reply brief explaining that when Congress amends a statute, if they're not looking to a particular topic that is the one at issue, those reenactments don't really speak to whether they were concerned notice posting or didn't concern notice posting, and I can give you the page on that. But at about the same time, it was drafting the Wagner Act. Congress amended the Railway Labor Act to include an express notice requirement. Your Honor, what's interesting and relevant about the history, the legislative history, of both the provisions in the Railway Labor Act and the National Labor Relations Act is that there is a remarkable absence of legislative history on either having notice posting in Railway Labor Relations Act and no legislative history either on why there isn't one in the NLRA. And this is a pattern also, actually, that you see with Title VII. There's no legislative history on Title VII's notice posting provision either. Right, but we know what they did. We know they did, but what we think the only logical conclusion that can be gleaned from this real absence of legislative history is that this was simply considered an interstitial matter. When there's silence in a statute, there's a lot of different reasons why there might be that silence. It might be that Congress expressly delegated the authority or implicitly delegated the authority to the provision, whether it was necessary at that time or another time. Section VI refers from time to time, as AHA pointed out. Or Congress may simply not have thought about it. There were a lot of other provisions in the National Labor Relations Act that got a lot of attention. Nothing about notice posting ever came up. Or it's possible there was a coalition on either side and they couldn't reach an agreement, so they just let it lie. Two main functions of NLRB is to conduct representation elections to prevent employers and unions from engaging in unfair labor practices. How does this notice posting provision that you enacted carry out the other provisions of the NLRB? Thank you, Judge Floyd. What we explain in our briefs is that this rule is, first of all, necessary to carry out the full and free exercise of Section VII rights because that exercise depends on employees knowing that those rights exist and that the board protects those rights. An employee is much less likely to take an action if they think that they could be fired for it with no recourse. Moreover, the Act carries out Sections VIII, IX, and X because our process is not self-initiating, we are not a roving commission. The fact that employees know about their rights and they know they have to come to the board within six months, which is one of the shorter statutory time frames, that knowledge is crucial. Actually, it's the same time frame as the 180 days in Title VII. Right, but at that time when it was enacted in 1935, it was considered certainly very short. The reason for the rule is to effectuate Congress' national labor policy through carrying out these processes established in VIII, IX, and X. These processes don't work if employees don't know they have to come to us within six months. At least with Title VII, there is a poster in the coffee room telling you that. There is no poster right now for the NLRA. But that sort of gets you back to the statutory distinctions. For instance, in Title VII, the EEOC is not limited to action by a charging party. Isn't that correct? You have the commission itself can file a charge. That is correct. That's not, as Judge Floyd was explaining or asking about, the limitations on what the NLRB can do. The NLRB doesn't have that same ability to initiate action that the EEOC has. Your Honor, that is certainly true. But, Your Honor, we don't see those limitations on the Board's actions under Sections VIII and X as speaking in any way to the Board's Section VI rulemaking power that it's been granted that was explained and upheld in the American Hospital Association case, which explains that the Board has the right to, from time to time, as conditions warrant, engage in substantive legislative rulemaking when necessary to carry out the provisions of the Act. And, moreover, one thing that's important to realize is that this rule is enforced exactly the same way as all other unfair labor practice cases. Nothing happens to any employer until there is a charge filed with the Board. And once there is a charge filed, it's in the regulation that the regional director is expected to contact that employer, ask that the notice be put up, and only if it's not put up might there be a complaint issued and a case that goes to the Board. The only remedies for not putting this up are an unfair labor practice finding, possibly equitable tolling, and possibly an animus finding. So it's proceeding exactly the same way as all of our other unfair labor practice cases. And certainly, to come back to this idea of affirmative duties that the Chamber mentions a great deal, the Board has frequently imposed affirmative duties on the employers under its jurisdiction. And, of course, the Chamber well knows that we impose such rules. We cited to you the Chamber's brief in Weingarten where they admitted that when the Board issues a rule in adjudication, that rule applies to all the employers under the Board's jurisdiction. And so, as we explained in our brief, the Board can impose affirmative duties under Section 8A1 such as the duty to bargain, such as the duty to give names and addresses when necessary. That was Technology Services Corporation. This is nothing that the Board hasn't done before in terms of imposing affirmative duty. Well, that seems to cut against your argument that it's necessary. Well, Your Honor, we take great issue with how Judge Norton construed necessary. He construed it as meaning that it actually has to, there has to be already wording in the statute in order to make it necessary. Just to have... No, no, I was simply reacting to your characterization of the Board's ability to do this I guess quasi-judicially. Well, that's exactly, actually, the power that we've been given by Section 6. And, at this point, let me explain that we have two different strands. No, no. I'm sorry to interrupt, and please feel free to go back there. But, just for purposes of my question, you were saying that this is exactly how you are proceeding on a case-by-case basis. Is that what you're saying? Well, once the rule is in effect, it will be administered on a case-by-case basis. Exactly like all of our other un-for-labor practice cases. There's not going to be roving commissions going into workplaces to see if the poster is up. If we get a charge, then we will investigate and ask the employer to put it up. But it's in the regulation that we're expecting that there will be compliance once employers know their responsibility. So, I'm just going to briefly explain that we do have two distinct strands of our arguments. We have our mourning strand and we have our Chevron strand. The mourning part is our Section 6 legislative rulemaking authority, which permits us to enact rules, which are not necessarily grounded in the exact words of the statute, but so long as we're carrying out the provisions and furthering the purposes and not acting contrary to the statute, that's a rulemaking power that the Board possesses. It sounds almost unlimited in the way that you described it there. Is there any limiting principle? It's very much not unlimited. We know that we couldn't rely on just carrying out Section 1. That would not be sufficient to carry out provisions under the Act. We can't act in a way that's contrary to the statute and we can't usurp a major policy area that can only be decided by Congress. But Judge Thacker, a major policy area is tobacco. A major policy area is extending into an area of jurisdiction that the Board never has, such as when the FTC decided to regulate lawyers as financial institutions. We are only regulating the employers. We have regulated for 75 years. There's no expansion that's happening here. And then I just want to explain our Chevron argument. The Chamber has conceded that we can construe ambiguous words in the statutes. And that's all we're doing. We're construing 8A1. We're construing interference in just the manner that Judge Hand permitted us to in Art Medals once he realized his error in Remington Rand. We're imposing a duty just like all the duties we've imposed under Weingarten and Washington Aluminum onto employers that a duty that they have to obey or else they're subject to an end for labor practice charge. This is nothing new. Thank you. I'm going to reserve the rest of my time for rebuttals. Mr. Getty? Yes, if the Court please. I'm Greg Getty and I'm representing the Chamber, the FLE in this case. What is new is that the NLRB is trying to transform itself from a reactive agency to a proactive agency by imposing requirements on employers that have not done anything. They've not coerced any employee. They don't have an election petition. They've done nothing wrong whatsoever under the law. And it is essentially, although they deny it, creating the NLRB as a roving agency that they admit in open court that they are not. When Judge Norton looked at the statute, he clearly reached the decision that the NLRB had exceeded their statutory authority by issuing a regulation that would require employers to post a notice of their rights under the NLRA. And Judge Duncan, you're correct. The EEOC is very, very different than the NLRB. Had Congress wanted to empower the NLRB with the same powers as the EEOC, they certainly knew how to do it and could have done so. But they did not. In fact, they empowered them under Section 10 as here and after provided to protect any person from violating or creating an unfair labor practice in violation of Section 8. So the plain text was relied on quite vividly by Judge Norton in reaching his decision. He noted that there is no mention of a notice whatsoever in the statutory language and as you correctly pointed out earlier in the legislative history in the amicus brief by the Congressman in this case, a narrow notice was proposed in the original Wagner Act, which was deleted by Senator Wagner himself. And the parallel between the Railway Labor Act and the NLRB is very striking. But there's no mention of notices, no requirement of employers to provide education on the statute in Section 10 limits it. Also, the structure of the law as a whole creates what I have described as a reactive agency. But it's something that counsel really admitted here this morning. The two functions, as Judge Floyd points out, are to handle elections and unfair labor practices. Section 8, 9, and 10 are not self-initiating. And the NLRB as an agency was created to be an impartial referee, not to advocate for one side or the other, but rather to take care of the rights of employees to make a free choice in whether or not they wanted to be represented by a union or engage in collective bargaining or the other rights under Section 7. Here the employers have done none of that. In reaching his decision, Judge Floyd relied on Chevron versus NRDC, which below was the controlling case, and I think it is here too, Judge Norton concluded that this regulation didn't pass the test of Chevron 1 and that the Board cannot bypass Chevron 1 by relying on the 10-year-old mourning case, which was decided 10 years before Chevron. In short, he found the language under Brown and Williamson, as you point out, when an agency is trying to expand or to become reactive and proactive, this Court needs to look at it very carefully and apply the statutory tools of construction that we've all known since law school. But the language of the statute is important. The structure of the statute, the structure was to set up a level playing field, and NLRB can only act in those cases brought before it, and that's replete in the record in this case. The statute is set up in three points. As Judge Thacker pointed out, Section 1 is the aspirational goals of the statute. Section 6 certainly authorizes regulations, but that right is tempered by Sections 8, 9, and 10, and specifically the language of Number 10 is important. There are certainly limits to what the NLRB can do. The statute may have been silent on the question of a particular notice, but it was not silent on the authority granted the NLRB at all. There are lots and lots of limitations placed there. Judge Norton found correctly, I believe, that you cannot rely on the aspirational goals, that is, pairing Section 1 with Section 6, because that would absolutely give the Board the unfettered right to do anything. There's a list of horribles I could go through, but they could go so far as to require a collective bargaining, to impose unions coming on to the company premises, to interview, say anything of that nature, if Section 1 is the only limit, that's something that they could do. The Board argues that Section Chevron 2 should apply here, but everyone agrees that to get to Chevron 2, you must pass the Chevron 1 test, and in this case, that simply has not happened. The Board also argues there's a gap to be filled. Well, there's really not a gap at all. The Act created an agency with limited powers and no intent to increase that roving commission. The other statutory laws, not only Title 7, Judge Duncan, but eight others also include notice provisions, and this one does not. So effective notice or when to require it, and they simply have not done so here. Now, as far as the enforcement mechanism, Council alluded to that in her argument. This creates a sixth unfair labor practice. Section 8 of the law has five unfair labor practices. This would create a sixth, that is, the failure to post that notice. Even, that certainly doesn't pass Chevron 1, because Chevron 1 addressed five unfair labor practices, not six. It also addresses Section 10b of the statute, which is a six-month statute of limitations. They would change that and toll it, clearly not authorized under Chevron 1, and the presumption of union animus really is not tested or mentioned anywhere in the statute and is beyond the scope of the Act. So the enforcement mechanism alone could not be severed from this and would render the regulation invalid without other arguments. In conclusion, I'd be happy to answer any questions, but we believe that the decision, this is a de novo review, but we believe that Judge Norton's decision was well-founded and ought to be affirmed. The inquiry is limited to the Chevron 1 analysis, and the intent of Congress was very clear based on the plain text of the statute, the structure of the statute, and the legislative history. And then, finally, Congress knows how to impose notice requirements if they want to. If the Labor Board really wants to do that, they know the way to the Capitol. Thank you very much. Thank you, Your Honor. I'm just going to briefly touch on Councilor's points. First, just to come back to the point about that the NLRA has been repeatedly amended since 1935. If you take a look at page 34, note 17 of our opening brief, we explain that when legislative consideration at those times was addressed to other matters, it was addressed to health care rulemaking, it was addressed to the adding of the Section 8B, then it is inappropriate to give weight to that inaction because notice posting wasn't brought up during any of those amendment times. And there's a Supreme Court case, Aaron v. SEC, that we cite for that. Next, as to the bringing up of Section 304B that did not pass in 1935, this was the focus of the Congressional amici brief. One of the very few things that Judge Norton and Judge Jackson in D.C. agreed upon is that that history is completely irrelevant. It's really apples and oranges. Section 304B would have required a particularized notice to particular employees that their particular individual contract is being abrogated. It has nothing to do with the kind of notice that the Board promulgated here telling all employees in a nationally standardized format what their rights are under the National Act. Next point, the Chamber has repeatedly said that we're requiring employers to educate employees. That's in no way true. I'm going to use this as a same poster that the Board has sent out thousands of prior to the D.C. Circuit's injunction. And all it is is an 11 by 17 poster which tells employees they have the right to engage in Section 7 activities. They have the right not to engage in Section 7 activities. It gives examples of illegal... Is that in the record? The wording of it is in the joint appendix at the end of the Federal Register notice. It's just sort of a visual of what it looks like. It gives examples of what unions can do that are illegal and it tells employees that the union is required to represent them fairly in bargaining. So this is what all the fuss is all about. Going to their point about referees, the Chamber asserts that the Board's job is to be a referee and to take care of rights and to make sure employees have a free choice in what they're doing. Your Honor, that decision necessarily implicates that those employees have knowledge about what rights they're choosing to exercise or not exercise. You can't make a decision. You can't make a choice if you don't know what the legal landscape is. Turning to mourning. Mourning is still good law. It's still been cited in this circuit and other circuits. It's never been questioned or overturned. Thorpe is a very good example of the kind of case that we're talking about. In the Thorpe Supreme Court case from 1969, HUD was not construing any particular language. They enacted a circular telling housing authorities in North Carolina and all over the country that employees had to be given rights of what the reason was for their eviction before they could be evicted. The Supreme Court found that to further the purposes of the Housing Act, not to be in conflict with it, and allowed the HUD to do that as a promulgation of their legislative rulemaking power. Turning to their 8A1 arguments, the one thing that they've never wrestled with is that the board could have enacted this rule through an adjudication. As we explain in our briefs... Why did you not? Your Honor, let me just point out that we did have a rulemaking petition for this rule that was pending for a long time. We actually had been going case by case through adjudication. There were a number of different handbook cases where there were rules that are found to be unlawful under the Act and have to be changed. I had wondered about that. It's the context in which I'm familiar with. It eliminates the problem you run into about being characterized as acting proactively. In that instance, you are responding to... There's been an unfair labor practice charge, presumably, and it appears to be a direct consequence of the functions that the statute creates that begin upon request. Your Honor, we certainly could have enacted this rule through adjudication, but it wouldn't have gotten us all the benefits of rulemaking that the Supreme Court and scholars have begged us to engage in for decades. It brings the whole country in. We had an extensive notice and comment process. To determine the wording of a poster based on an adjudication would have been very difficult. We wanted to get lots of comment, lots of public record. We got about 7,000... It would have been tailored to the charge. It would have been tailored to the challenge procedure. Please don't interrupt me. It would have been... To the extent that the allegation is that the Board is acting proactively, that would have negated that criticism. It would have been tailored to the practice that was challenged. Your Honor, all these handbook cases are just examples of a larger problem that received a solution to be a national poster, nationally standardized, aimed at everybody. We thought the best way to do that is to take Judge Friendly and the Supreme Court's and all these scholars' suggestions that we engage in substantive rulemaking as we have the power to do unquestionably under Section 6 in the American Hospital Act. I also just want to note that the FLSA also has a regulatory notice posting that has never been challenged. Finally, their claim about the animus has been waived. Do you want to conclude since you are... Sure. I'll just wrap up. The mechanisms, except for the 8A1, have not been briefed at this level. Judge Norton has not passed on the legality of our 10B equitable tolling mechanism, but we do believe that that is an equitable way, a lawful way of enforcing the Act that is very common to other employment notice regimes. And then finally, the animus mechanism was never challenged by the Chamber in District Court, and it is our position that they've waived that challenge. So we would ask that you would uphold us either on the Morning Ground or on the Chevron ground that we're construing 8A1. Thank you very much. We will come down in group council and take a short recess.
judges: Allyson K. Duncan, Henry F. Floyd, Stephanie D. Thacker